This is the second time this case has come before the Ninth Circuit after decisions by Judge Bluh, which rejected the opinions of a vocational expert who assumed the work history of Ms. Kidwai, assumed the functional limitations articulated by her treating physician and a non-examining physician at the records bureau, Dr. Wallace, and stated that she could not perform her regular occupation as a senior planner for Alpha Therapeutic, nor could she have performed any other work. There isn't any evidence to the contrary. And I would submit to the Court that the difficulty with pain, with prolonged flexion and extension of the neck, with repetitive motion of the neck, that these are the kinds of limitations that we as laypeople may have some insight into, but we lack the education, training, and experience to articulate in any meaningful manner whether such an individual, so afflicted, could engage not in some hypothetical work activity, but in work that actually exists in the economy, work that is available, work that people are actually doing. Mr. Lee said clearly that Ms. Kidwai cannot engage in work activity. Dr. Wallace didn't say she could do an identifiable job. Dr. Gaetan didn't say she could do an identifiable job. But they described a baseline ability to engage in work activity that raises a question. And what the district court has done and said, and Prudential before Judge Liu, has said, we're going to substitute our judgment for trained professionals. We're going to make it up out of whole cloth. And that is not substantial evidence. That is not the kind of error-free decision-making process that this Court ought to countenance. This Court, when faced with an uncontroverted record, and clearly Prudential in control of when decisions were made, could have gone out and gotten its own opinion from a vocational expert, made that opinion available to counsel for review and comment under the Secretary of Labor's regulations, and chose not to do so. The interrogatories that were submitted to Mr. Lee were not stipulated to, were they? Did the government stipulate to the interrogatories, to the form of the interrogatories, because Mr. Lee did not actually examine Ms. Kidwai, right? The form of the interrogatories, I drafted the interrogatories. Okay. I sent them to Mr. Lee. I hired Mr. Lee. I asked him to respond. Okay. But, of course, Mr. Lee did not examine Ms. Kidwai. No. And his answers are very, very short. They're all based on the assumptions which are given to him in writing. Did he have any other records before him or only your assumptions? He had the assumptions. And so the question would be whether the assumptions accurately portray the opinion. Right. And I think the first question I put to you, counsel, was did the insurance company stipulate to those assumptions? The insurance company, in the final decision, actually found them. Let me phrase it again, counsel. I hope I can just get a yes or a no. Did you submit these interrogatories to Prudential for their approval and their agreement to them before you sent them over to Mr. Lee? Your Honor. I think you can answer that yes or no, can't you, counsel? The answer to that question is absolutely not. Okay. All right. And there's a reason for that. Okay. The reason for that is that my client has the burden of proof. And for me, for instance, we sent interrogatories to Dr. Wallace and sent copies to the insurance company and said, we would like, since you have this doctor review the records and express opinions, I have a couple of additional questions. Could you, Dr. Wallace, answer these questions? And Prudential told Dr. Wallace, don't answer his questions. Slamming the door, and this is in a paradigm where we don't get to depose experts, we don't get to do pre-litigation development, Prudential slams the door and says, you can't ask Dr. Wallace questions. And now the court is saying, well, why don't you get permission from the insurance company to hire a vocational expert? Counsel, I'm not questioning your strategy. I'm trying to figure out whether the assumptions that you wrote, that you submitted to an interrogatory forum to Mr. Leaf, who never saw your client, we have very, very short responses. These are nearly yes, no, five sentence, five word sentences in response. But they're all based on the assumptions you gave them. These were not assumptions that were stipulated to. So now that means, then, that you're going to have to defend every assumption that's in here. And I have not seen in this record Prudential attacking the assumptions. Prudential has said, well, the answers are brief. But if the question is, can this person perform their work as a senior planner, as the court has already admonished me, sometimes the answer is yes or no. Sometimes it's just a plain yes or no. And Mr. Leaf answered the questions plainly and unambiguously. Because, as you properly admonished me already, sometimes yes or no is the only answer that's appropriate. And that's what Mr. Leaf did. I think you misunderstood the judge's questions to you. He recognizes what you just said. Anybody reading it has to recognize that. Yes, sir. But he was answering based on assumptions, wasn't he? Mr. Leaf was. That's correct. And the question is, were the assumptions valid? And in your opinion, they were. But does that, then, bind the insurance company? It doesn't bind the insurance company, but it's evidence that the insurance company ought to take into account in making a decision. And because of the de novo standard of review that the district court exercised, as this court found in the first time this case came before the court, this court remanded because this kind of evidence ought to be considered. The Ninth Circuit in the prior panel did not mandate a specific decision, but instructed the district court to consider the actual content. As probative material evidence. And basically what the district court did is disagree with the mandate of this court and said it's not material probative evidence. And if the assumptions that are contained in the interrogatories to which Mr. Leaf responded were invalid, were not accurate reflections of what Dr. Gaetan and Dr. Wallace had previously articulated, I'm quite certain that the prior panel in this court would not have remanded the case and would have affirmed at that time. Has anyone challenged these assumptions? Your Honor, not to my knowledge. Not in any clear, concrete manner. They just said the answers were too brief. The answers were too brief. That's correct. That's correct. And I would submit to Your Honor that the answers are appropriate, because the answer in Mr. Leaf's mind was clear. I have a minute and 50 seconds I'd like to reserve. Okay. Thank you. Mr. Alberts. Good morning, Your Honor. My remarks are actually quite brief. Here what we have is the court, the district court, Judge Liu doing exactly what the Ninth Circuit asked him to do, and that was weighing the evidence. Judge Liu looked at the administrative record. The administrative record included extensive medical records by the treating physician, Dr. Gatton, a very comprehensive report by an outside orthopedic consultant that Prudential retained, Dr. Wallace, the job description, which I think is very important to look at, which was signed by Ms. Kidway, as well as the remarks of her employer. And Mr. Leaf's responses to this brief set of questions. The judge looked at all of this evidence, considered it all, and simply said that in balancing the evidence and weighing the evidence, he believed that the evidence that Prudential had in its administrative record, which supported a finding of disability, that there was no disability, were more persuasive. This court's role is to review for clear error. Given that there is abundant evidence, on the one hand, saying that she is not disabled, this court should simply affirm the lower court's ruling.  But he indicated that you say she's capable of working. What jobs can she do? There's no listing, and he's arguing, as I understand his argument, it's all right to say she can do it, but if there's nothing of the kind available, it's of no consequence. Well, there's only one job that we're looking at, actually, in this analysis. We're looking at her own occupation. That is the senior planner. We're not concerned with what job she might be able to perform under the any-occupation standard. No, I wanted to give you an answer so that when he comes back to rebut, he can do it. Okay. And I believe that both Dr. Wallace and Dr. Gatton, the treating physician, both determined that she could engage in light work. So you do dispute, then, the premises that were given in the interrogatories to Mr. Leith? Well, they're generalized statements of restrictions. I think what should have happened is that Mr. Leith should have reviewed the medical records, just as Dr. Wallace did, and determined based on the actual specific limitations, which were set forth by Drs. Gatton and Dr. Wallace, whether or not she could have performed the duties. Are the restrictions that were placed by Drs. Gatton and Dr. Wallace consistent with the assumptions that were given to Mr. Leith in the interrogatories? They are paraphrased. I wouldn't say they're complete, and I don't think we've ever accepted that they are. But even if we assume that they are, for the sake of this argument, if we assume they are, it still is only the beginning of the inquiry. What we have is a balancing going on. We have both Prudential at the administrative level, and then Judge Liu during this litigation, looking at all of the evidence, looking at the reports and the medical records, looking at Mr. Leith's report, looking at the job description, balancing it and making a determination. Is this woman disabled under the terms of the plan? And both Prudential and then Judge Liu, in balancing the evidence, decided that the evidence from the physicians, that was very extensive and reflected medical testing by Dr. Gatton, clearly supported that this woman could work in her own occupation. Mr. Alberts, I might look at it as if it were before the court and you have the testimony of these three doctors, wasn't it, that said she could do her work? And then in opposition, let's suppose that this vocational expert was there. Personally, these questions were posed to him, and he said, no, she can't do her work. And then the ALJ or the district court is called upon to say, well, now, which position am I going to take? What are we going to take? And so then the court thinks about it and he said, well, I'm going to go with the doctors. And the court says his responses were brief, and I think, well, sure, they were brief, but that doesn't mean too much. But then he says, too, we don't really know what this fellow's background or experience is. I think, wasn't that part of it? Yes. The kind of the things that typically you would have done on cross-examination if that award had been available to you. And then the court would have made its decision, and the court did make its decision here. And that's kind of your case, I think. Yes, certainly, that's one of the positions we're taking. Yes, all of this evidence was before the court. They looked at it. They weighed it, as they do in a court trial. The court believed Prudential's evidence was more persuasive. They were Prudential, and we believe that ruling should be upheld. So the vocational expert could be a wonderful man, very good. This was his honest belief, but the court just didn't accept it. That's correct. Well, accepted the opinions of the other doctors, is the better way to put it. Well, I think the court took it into account, reviewed it. Clearly, when you re-judge Lew's opinion, he indicates that he simply didn't find it as persuasive. Okay. If there's no other questions. Okay. Thank you, Mr. Alberts. Mr. Rolfing? I think the analogy breaks down because Dr. Gaitan never said she could go back to her normal work. He released her to light duty, which she couldn't tolerate, but he never said go back to your specific occupation. Dr. Wallace never said she could go back to her regular occupation. He imposed limitations. Those were pretty minor limitations, weren't they? Well. Go ahead. In some context, in some limitation, in some kind of limitation. She couldn't reach up and she couldn't push things around, but she didn't have to do that in her job, did she? It was neck posturing that was critical. It was what? Neck posturing and neck fixation that's critical. For instance, if you and I lost the ability to engage in prolonged neck flexion, we'd have a real hard time reading briefs. It doesn't seem like a significant limitation, but we'd have a real hard time reading briefs. Now, maybe I'm self-employed so I can get an ergonomic station, get it elevated and put it in a location that I can control. Yeah. Or you as judges, because you control your own docket, you could control. But Nahitidwe doesn't have that luxury. She works in the workstation that is designed by her employer or by similarly situated employers because it's not a job definition. It's an occupational definition. And Mr. Lee said that she could not, because of the limitations in use for her extremities, because of limitations in unable to keep her neck in a given position for prolonged periods of time, that that's why she can't work. Neck posturing is critical to work function. Can she work in anything? That neck posturing does seem to be a big deal. And if she can't do anything, then that would suggest that she's totally disabled, which of course would be inconsistent with the opinions of both doctors. But it would seem to be more consistent with what Mr. Lee thought. I can't go outside of the record and tell you what other agencies have found in terms of her disability, but I can tell you that in my experience, and I've been litigating disability cases, both arrested and social security disability for 20 years, neck posturing, these kinds of limitations frequently result in findings that the person is totally disabled. That's my experience speaking. That's not my personal opinion. That's my informed opinion. Yeah, but neither of the doctors that either looked at her or examined her records thought that that was, it came to that conclusion. But they didn't say she could go back to her specific job. No, they didn't say she could go back to her specific job, but both of them said she could go to a light-duty station. Right. And that suggests that she could do some kind of a job without a total accommodation in which you have to redesign the whole environment around yourself, as you said you might have to do in your position. And that's why medical experts describe limitations, and vocational experts tell us whether that job exists. And that's the fundamental keystone of this case. Okay. Thank you, Your Honor. Thank you, Mr. Rolfing. Case is submitted.
judges: Farris, Thompson, Bybee